The Chief Justice delivered the opinion of the court.
In this case exceptions are taken to an indictment, and the caption accompanying it, which was found at the Court of Oyer and Terminer, of the county of Warren, in June, 1826, and removed into this court by certiorari, sued out at the instance of the defendant.
Briefs have been submitted to us by the respective counsel.
Some of the objections contaiiied in the brief on the part of the defendant, relate to an amendment of the caption, and ought not now to have been raised. The points involved in *453 them have been *in substance, twice decided by this [*365 court in this cause. To urge them again was not regular, and they might with perfect propriety be passed without further remark. But our wish is not only to do right, but to give satisfaction; not merely to decide causes, but to shew forth the reasons and grounds of our determinations. We shall, therefore, examine these objections somewhat at large.
Tho caption of an indictment is no part of the indictment itself. It is not presented by, nor does it receive the sanction of, the grand jury, nor the signature of their foreman. It is an history of the proceedings previous to the finding of the indictment; and sets forth the style of the court; the time and place of its session; by whom held, and their title and authority; by whom they are to enquire; the names of the grand jurors; their qualifications; whether sworn or affirmed, and who of them are sworn and who affirmed, and if affirmed the reason of it, that they alleged themselves to he conscientiously scrupulous of taking an oath; and then follows their presentment. It is drawn up by the prosecuting attorney, or by the clerk of the court. Many reasons evince the propriety of drawing up and filing the caption at the term when the indictment is found, but however commendable, it is not always so done, either in the English courts or in our practice, but is oftentimes postponed until after judgment, when the record is to be made up, or until a certiorari being presented, it becomes necessary, in order that the whole proceedings may be duly certified according to the exigency of the writ, to the Supreme Court. From this view of the nature of a caption, its capability of amendment, and the reason and propriety of it, may be readily perceived. Even when returned into tho Court of King’s Bench, on certiorari, the schedule, for so this part of the return is in some of the books called, being according to them, the materials from which the caption is to he drawn, and the caption itself, after that appellation, is according to *454 all of them properly assumed, have always been deemed to be amendable. Eor a time indeed, it was held that an amendment could only be made in the term of the return of the writ, and not at any subsequent term, as will be seen from 2 Hale P. C. 168, and by the cases of Rex v. Brandon, Comb. 70; Faulkner’s case, 1 Saund, 249: Regina v. Hoskins, 2 Ld. Raym., 968; Regina v. Franklyn, ibid, 1038; Rex v. Glover, 1 Sid., 259. But in the time of Lord Mansfield the subject underwent a thorough investigation, and it *366] was *found that the caption was not only liable to amendment in the term of its return, but afterwards, and even after verdict. A recurrence to the case of Pex v. Atkinson, a report of which is given by Sergeant Williams, in his note to 1 Saund. 249, will be useful from its analogy to the case before us, and because, having been affirmed in the House of Lords on a writ of error, it is considered to have settled the-law on this subject in the courts of Westminster. Atkinson was indicted for perjury at the Oyer and Terminer of the county of Middlesex. The indictment was removed at his- instance by certiorari into the Court of King’s Bench. At a subsequent term, and after the defendant had been tried and found guilty, his counsel moved in arrest of judgment on two objections to the caption; first, because from the caption it appeared the indictment was found before'justices of the peace, who had no jurisdiction of perjury at common law; second, because the names of the grand jurors did not appear upon the record. Eor in making up the entry roll in the treasury, and the nisi prius record in the Court of King’s Bench, the officer had not only followed the caption as returned in respect to the style of the court, but had omitted the names of the grand jurors. Afterwards, in the same term, the attorney general moved to amend the return to the certiorari, by inserting the commission of Oyer and Terminer and the names of the justices before whom the' indictment was found, according to the fact appearing by the said commission and the minutes of *455 tlie court; in other words, to amend so as to cause it to appear that the indictment had been found, as in truth it was, before a court -of Oyer and Terminer having jurisdiction, and not before a Court of Quarter Sessions of the Peace. On this application a rule to shew cause was made, a copy of which is to be found iu a note in 4 East 175, the material part of which is'as follows: “upon reading the affidavits of J. B. and J. P. and also on reading the commission of Oyer and Terminer for the county of Middlesex, and the minutes of the court before which the indictment in this case was found, now produced and shewn to this court, it is ordered that Wednesday next be given to the defendant to shew cause why the return to the writ of certiorari should not be amended by inserting therein the commission of Oyer and Terminer by virtue of which, and also the names of the justices by whom, the above mentioned court was holden, at the lime when the said indictment *was found, according to tlie truth of the [*367 fact appearing by the said commission and minutes above mentioned; and also why the caption of the said indictment should not be thereby amended, and made agreeable to the said return when so amended as aforesaid, and also that the defendant shall upon the same day, shew cause why the aforesaid caption should not be likewise amended by inserting therein the names of the jurors by whom the indictment was found as stated in the return already made to the said certiorari.” After argument, in which the authorities to be found in the books were examined, the rule to shew cause in both branches was made absolute, the caption contained in the return was amended, and another rule was also entered to this effect, “ that the entry roll in tlie treasury, and also the record of nisi prius, be amended as to the caption of the indictment, by making the same agree with the amended caption lately returned into this court by the clerk of the peace of the county of Middlesex, and filed in this court.” Lord Mansfield, in delivering the opinion of the court, said, *456 among other things, “The doubt is whether the authority is properly set out; and. perhaps, without prejudice to the question, it would be defective. Who are the commissioners of Oyer and Terminer ? The return says, four, of whom Sheppard is the last: but not four only; it says, and others. Then does there remain in the original minutes enough to amend by ? Beyond a possibility of doubt, I think, there does. There appear the names of the jurors sworn under the commission of Oyer and Terminer. There appear the names of the justices, whom the clerk swears were there. What then is to impeach it ? Nothing. No oath that any of them was not there. Therefore if by law a return to a certiorari can be amended after the term in which the indictment comes in, there can be no doubt bub these circumstances will be sufficient to amend it.” He then, after a review of the authorities on this point, says, “We think these authorities alone, not contradicted by any determination whatever, would bind us to make the amendment prayed. The application is not to alter any part of the charge; not to vary the verdict or finding of the jury; it is not to cure any original defect; but to make the return of the proceedings in the inferior court conformable to what they really have been, and to *368] make that return speak truth which now by *mere blunder of the officer is contended to contain a falsehood.’’ This subject came again before the Court of King’s Bench, in the case of Rex v. Darley, 4 East 174. An indictment for assault and battery was found in the Court of General Quarter Sessions of the Peace of the county of Sussex, was removed into the Court of King’s Bench by certiorari, and upon trial at the assizes, tlie defendant was found guilty. Afterwards the counsel of the prosecutor obtained a rule to shew cause “ why upon reading the affidavit of W. E. and a parchment writing thereto annexed, and the minutes of the court before which the indictment in this prosecution was found, now produced and shewn to this *457 court, the return to the writ of certiorari issued by this court at the instance of the defendant should not be amended by inserting, in the return of the caption, the time when the General Quarter Sessions of the Peace at which the said indictment was found, was holden, and the names of the justices by whom the said session was holden, and the names of the jurors by whom the same was found, according to the truth of the fact; and why the entry roll in the treasury, and also the record of nisi prius, should not be amended as to the caption of the indictment, by making the same agree with the caption when so amended.” Upon making this rule, it appears from the report that the clerk of the Court of Quarter Sessions attended with the book of minutes of that court, that it might be inspected. On a subsequent day, that eminent lawyer, Erskine, who was the defendant’s counsel, admitted that he could not oppose the amendment prayed, and the rule was made absolute.
In the case of John Bell, indicted for murder, upon motion in arrest of judgment for a defect of the caption. President Addison, of Pennsylvania, held that the caption was amendable; and that it was to be considered not so much an original, as a formal transcript of other materials in the records, or during the term, in the breast of the court, and when occasion requires, made up in form by the clerk from the materials necessarily before him. Addison’s Rep. 180.
In the case under our examination, upon the return originally made to the writ of certiorari, it appeared in the caption that “ by the oath of D. S., &c., [naming the grand jurors] good and lawful men of the said county, sworn and charged to enquire, &c., it is presented,” &c. And in the body of the indictment it is thus : *“ upon their res- [*369 pective oath and affirmation present, those who were affirmed alleging themselves to be conscientiously scrupulous of taking an oath, that,” &c. On the motion of the prosecuting attorney of the county of Warren, we made a rule “ that the certiorari *458 and return be remitted to the Court of Oyer and Terminer of-the county of Warren, to the end that the caption returned with the certiorari may be amended, according to the fact, in'the two following particulars, to wit, that the said caption may set forth whether any, and ■which, of the grand jurors mentioned in the said caption, were duly affirmed, and whether prior to such affirmation they declared themselves conscientiously scrupulous of taking an oath; and second, whether the grand inquest was then arid there sworn and affirmed.” At a subsequent term the certiorari was sent back to us, and the return contains, among other things, a caption amended in the particulars mentioned in the rule, and stating that “ by the oaths of D. S.” and others, naming them, “ and by the solemn affirmations of C. R. and S. L., the said 0. R. and S. L. alleging themselves to be conscientiously scrupulous of taking an oath, good and lawful men of the said county, then and there sworn and affirmed, and charged to enquire,” &c., “ it is presented,” &c. From a rule of the Court of Oyer and Terminer, set forth in the return, it appears the caption was amended under the sanction and by the direction of that court; and the whole is then certified to us'to be truly copied from the minutes and files of the said Court of Oyer and Terminer.
From the authorities which have been cited, it is clearly shewn that the amendments to the caption returned with the certiorari might have been made in this court, upon proper evidence of the facts and of the entries on the minutes of the Oyer and Terminer. Propriety, convenience and congruity, however, dictated the remission of the certiorari and return to that court, that the amendments might be made there. And it is to be observed, our rule did not direct the court to make the amendments, but simply placed the return again in their hands, that they might make them if there were before, them grounds and documents to warrant the measure.
*459 By tlio course we adopted, the inconvenience and risk of the actual production in this court of the original minutes by the clerk of the county of Warren, as was done in the case of Rex v. Darley, were saved.
*It is however objected by the counsel of the [*370 defendant, that the rule of this court “was rnade'without any evidence on the part of the state that the said caption was not a true copy from the minutes and files of the said county of Warren upon the said indictment, and that there was diminution in the said return.” This remark results from an omission to notice the difference between making amendments here, and submitting the matter to the court below. If made here, plenary evidence of the facts which entered into the amendments would doubtless have been required ; but such evidence was not necessary for the measure adopted by us. The oral certificate of the prosecuting attorney, that there were materials in the court below from which amendments might be made, that the minutes and records and files of that court would supply all alleged deficiency, and that the truth would he thereby attained and public justice saved from discomfiture by the mere blunder of the officer who had made out the caption, was sufficient. Let the uniform language of.our entries be recollected. “Upon allegation of diminution.” Nor is there any weight in another objection of the defendant’s brief, that our rule was made against the express certificate of the clerk of the county of Warren, that the original return was a true copy from the minutes and files. No precedent or principle has been cited, or can be shewn, which shall give to the certificate so conclusive and uncontrollable an influence as is here ■claimed for it. The certificate was doubtless true at the time it was made. But will any one say, after consideration of the authorities, that an amendment of the return is thereby precluded ?
It is further objected that the Court oí Oyer and Terminer ordered their clerk to amend the caption, whether there *460 was anything to amend by or not; that the return does not state there was anything to amend by; and that the cleric has not amended the caption at first returned with the certiorari, but has made out and sent a new caption. The first of these remarks is founded on a misconception of the matters contained.in the return. The court did not order the amendment, whether there was or was not cause for it, and ground to warrant it; but on the motion of the prosecuting attorney, and after due examination, and upon proper evidence, as we are bound to presume, they ordered the caption contained in the return to be amended. Is there indeed on our part any great presnmption in *371] supposing that the minutes of the *court -distinctly shewed that the jurors were then and there sworn and affirmed ; and who were sworn, and who affirmed; and that the latter alleged themselves to be conscientiously scrupulous, which indeed they have themselves set forth on the face of the indictment? The court do not in their rule express the causes or reasons for it. Nor did practice or convenience require it, and hence the answer to the second topic of remark is also given. It is true the clerk did not alter- or amend, by interlineations and erasures, the caption which had been in the first instance annexed to the certiorari, but adopted a much more discreet and judicious mode by making out and sending here a new copy containing such alterations as had been made by the direction of the court; and this manifestly is what the clerk means by the expression he has used, “new caption,” for he certifies that it is truly copied from the files of the court.
Upon the whole, on a careful and deliberate review, we find nothing irregular or illegal in the rule of this court, in respect to the amendments; nor in the proceedings of the Court of Oyer and Terminer consequent upon that rule.
By the return of the certiorari, as it now stands, certain of the exceptions originally taken and since renewed, are not sustained in point of fact. They need therefore no further examination.
*461 Another exception is “ that it does not appear that the persons supposed to be the grand jury had been summoned and returned as such.” The answer to this exception is given by most, if not all, the precedents of captions to be found in the books. 2 Hale P. C. 165; Foster 3; 1 Saund. 249; Crown Cir. Comp. passim; 4 Chit. 189, et seq.; Archbold Cr. Pl. 6, and especially the precedent sanctioned by this court, The State v. Gustin, 2 South. 746. To all these the present caption is conformable. It is not set forth that the grand jurors were summoned, or the manner of it, other than in the words, “ by the oath of A. &c., good and lawful men of the said county, then and there sworn and charged to enquire for the king and for the body of the said county.” In a very few of the precedents, the words “impanneled, sworn and charged,” aro used, but in a case reported in 3 Salk. 191, in the second of Anne, an exception to a caption for the want of the word “impanneled ” was overruled, and the word held to be unnecessary.
Another exception is “ that the indictment charges the publication *of the forged acquittance and receipt to [*372 have boon with intent to defraud Jonathan Oliver, and it appears by the indictment that to utter and publish it could not defraud him.” No reasoning is given in the defendant’s brief in illustration of this exception, and the manner in -which it ivas intended to be enforced is not readily seen. The rule in respect to this allegation in indictments is well understood. It is not necessary to prove that the person intended to be defrauded was actually defrauded. If from circumstances the jury can presume it was the intention of the defendant to defraud him; if in fact he might have been defi'auded had the forgery succeeded, this allegation is satisfied. Now in the present case the instrument alleged to be forged, and the publication -whereof is charged on the defendant in the indictment, purports to be a receipt given by Oliver to Jones, the defendant, for a certain sum of money, in full of the debt, interest and costs, of a judgment *462 obtained by Oliver against Jones before a justice of the peace, which Jones had removed by certiorari into the Supreme Court. If this forgery had succeeded, can we say, especially at this stage of the cause, that Oliver might not have been defrauded ?
Another exception is, “ that the defendant is described in the indictment to be, late of the township of Hardwick in the county of Warren, and that on the 28th of August, 1824, the time when the offence is charged to have been committed, there was no such township, and consequently no such person as John I. Jones of that township.” This objection is founded in error. The description of place has reference to the time of the finding of the indictment, not of the commission of the crime. At the time this indictment was found there was, and for nearly two years had been, the township of Hardwick in the county of Warren, and Jones was and had been a resident there.
The remaining exception is, “that by the indictment which was found in the county of Warren, the crime charged appears to have been committed in the county of Sussex.” In the month of November of that year, the county of Sussex was divided. A-new county, called Warren, was set off from it, of which the township of Mansfield composed part, and after the division was called the township of Mansfield in the county of Warren. The indictment charges that the offence was committed on the 28th day of August, *373] *1724, at the township of Mansfield, the said township of Mansfield then being in the county of Sussex, and now (at the time of finding) being in the county of Warren. The description is strictly conformable to the fact. In the act of the legislature setting off the county of Warren from the county of Sussex, there is no express provision that offences previously committed in that part of the ancient county of Sussex created into the new county, should be cognizable in the courts of the latter. It contains a provision that all suits then commenced should proceed in the *463 county of Sussex, which carries a strong implication that new suits should be commenced and prosecuted within the proper and respective counties. But no such express provision was necessary. It followed from the principles of the common law that the crime should be prosecuted in the courts of the county of Warren. Grime, as to the place of trial, is local; and the court, being a court of the same state which has jurisdiction over the place where the crime was committed, has cognizance and may hold plea of the crime. No rule or principle of the common law is thereby infringed. At common law a grand jury may not enquire of facts committed without the territorial limits of the county in which they sit, and the petit or traverse jury should be convened de vicineto. In the present case, the crime, if committed, was perpetrated within the bounds of the county of W arren, and the whole township of Mansfield being in that county, the jury may be brought from the vicinage, even if that term be used in its most ancient and restricted signification. The erection of a new county is erroneously supposed to create in this respect some new relation. The offence is against the state, not against the county; and as wo find here, a grand jury sitting to enquire for the state, and for the body of the county within which the matter occurred, a petit jury of the neighborhood, and a court having cognizance of offences of this nature, we perceive every requisition of the common law fulfilled, and are not compelled to deplore the spectacle of a criminal pointing in scorn at the figure of justice with her sword broken and her arm palsied. Suppose the legislature had created a new court for the trial of crimes, the county of Sussex remaining the same, could any doubt of its jurisdiction exist because of its creation subsequent to the perpetration of the offence ? The argument drawn by the defendant’s counsel from a supposed cession of -the township to Pennsylvania *or some [*374 foreign jurisdiction, even if sound, has no force, for the place here remains in the same state, under the same government, *464 and the offence, as already remarked, is against the peace of the' state, and there is therefore no incongruity in either describing or punishing it, as there might be in averring it to be against the peace of Pennsylvania, or in prosecuting a crime in a state different from or foreign to that in which it was committed. Nor is there any analogy to another case mentioned in the brief of the. defendant’s counsel; a murder, when the stroke was inflicted in one county, and the death happened in another, which could not be indicted in either at common law. The reason is given in the preamble of the ancient statute, 2 and 3 Edw. 6, ch. 24, “ By the custom of this realm, the jurors of the county where 'such party died of such stroke, can take no knowledge of such stroke, being in a foreign county. Nor the jurors of the county where the stroke was given cannot take knowledge of the death in another county;” in other words, one of the facts necessary to constitute the crime occurred without the territorial jurisdiction of each grand jury, and of it they could therefore receive no proof; but in the case before us, all the ingredients of the crime, if they occurred any where, took place in the county of Warren.
The exceptions are overruled. Let the defendant plead to the indictment.